JACKSONVILLE PAPER CO., A CORPORATION *v.* UNITED STATES (NOS. 4395, 4396, 4397, 4398, 4399, 4400)[1]

United States Court of Customs and Patent Appeals, March 1, 1943

*Louis Kurz* and *Ragland, Kurz & Layton* for appellant.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument December 1, 1942, by Mr. Kurz and Mr. Weeks]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

---

[1] C. A. D. 228.

GARRETT, Presiding Judge, delivered the opinion of the court:

We have here appeals in six cases which were consolidated for trial in the United States Customs Court, and consolidated for the purpose of appeal to this court. The issues are identical in the several cases and were disposed of below in a single decision by the Third Division of the United States Customs Court which rendered judgment overruling the importer's protests against the action of the Collector of Customs at the port of Jacksonville, Fla., in liquidating six entries of kraft paper, imported from Sweden, at the entered value instead of the appraised value.

It appears that in March, 1936, appellant made an importation of kraft paper which it entered for duty valuation at the invoice price, and that it was appraised by the local appraiser at the value at which entered. That importation is not involved here, but a statement concerning it is pertinent for reasons which will later appear. The entry was No. J–271 and the entered value was found to be the export value which finally was held to be the correct dutiable value.

The first of the six importations which are here involved was made in April, 1936. Respecting it the importer submitted an entry upon the same basis—invoice price—as that in entry J–271. Appellant claims that the customs officials at Jacksonville, Fla., declined to accept the entry so submitted, and required an entry for duty valuation upon the basis of foreign value, which was higher than the export value. As to just what occurred with respect to this alleged requirement there is a sharp conflict between the testimony of importer's witnesses and that of the witnesses for the Government to which we shall allude later.

The five subsequent importations were entered upon the same basis—that of foreign value—the last entry being made August 10, 1936, and in each of the six cases the importer was required to give bond in an amount sufficient to cover duties based on such foreign value.

In the meantime the collector had appealed for reappraisement as to entry J–271, covering the March, 1936, importation, and the importer in due time took appeals for reappraisement in the other cases.

The appeals were heard by Judge Keefe of the Customs Court and he, on February 26, 1940, rendered decision sustaining importer's contention that the export value as represented by the invoice prices was the correct dutiable value. Reap. Dec. 4742, 4 C. D. 662. In his decision he cited the proceedings had in the case of *Arkell Safety Bag Co.* v. *United States,* reappraisement 113624–A (the record in which was incorporated as a part of the record before him in the reappraisement cases affecting importer here), finally decided in Reap. Dec. 4670, 3 C. D. 616.

We have been unable to determine from the record before us the exact date on which the appeal for reappraisement in the *Arkell Safety Bag Co.* case, *supra*, was filed. It appears from the decision in the case that the paper (which it is agreed was in all respects similar to that here involved) was entered at the port of New York, September 10, 1930 (entry No. 739595/1), and the final decision as to its reappraisement was rendered November 3, 1939. The decision of Judge Keefe respecting the reappraisement of the paper here involved states, in effect, that the record in the *Arkell Safety Bag Co.* case, *supra*, was made June 23, 1937, but we assume that the proceeding was actually instituted at a time prior to that and that it was probably pending at the times the entries here involved were made in 1936. It is clear from the testimony in the protest proceeding now before us, however, that neither the importer nor the customs officials at Jacksonville knew of the pendency of that, or any like case, at the times of such entries.

In making the entries the importer did not follow the provisions of section 503 (b) of the Tariff Act of 1930, the so-called duress entry statute, and when the collector, on July 18, 1940, liquidated the six entries here involved he, evidently feeling himself bound by section 503 (a) of the act, made liquidations upon the basis of the entered value which was higher than the finally appraised value.

We here quote the pertinent parts of section 503 of the Tariff Act of 1930, the italics being supplied:

SEC. 503. DUTIABLE VALUE.

(a) GENERAL RULE.—Except as provided in section 562 of this Act (relating to withdrawal from manipulating warehouses) and in subdivision (b) of this section, the basis for the assessment of duties on imported merchandise subject to ad valorem rates of duty shall be the *entered* value or the final appraised value, whichever is higher.

(b) ENTRIES PENDING REAPPRAISEMENT.—If the importer certifies at the time of entry that he has entered the merchandise at a value higher than the value as defined in this Act because of advances by the appraiser in similar cases then pending on appeal for reappraisement or re-reappraisement, and if the importer's contention in such pending cases shall subsequently be sustained, wholly or in part, by a final decision on reappraisement or re-reappraisement, and if it shall appear that such action of the importer on entry was taken in good faith, the collector shall liquidate the entry in accordance with the final appraisement.

It is conceded by counsel for appellant that it is not in position to obtain relief by reason of section 503 (b), but it is contended, as stated in their brief, that:

* * *. Section 503 applies only to cases where the Collector acts under the law and that in this case the entries were made under actual duress, hence can create no estoppel and for that reason the Court is empowered to afford relief.

In order that appellant's position may be fully understood, we quote from its protest No. 42190–K/3100, involved in suit No. 4395 (it being typical of all the protests), the following allegations:

1. That prior to the importation here involved the importer entered like merchandise in the Port of Jacksonville, Florida under Entry No. J–271 on March 14, 1936 on the basis of invoice price of said merchandise, i. e. $2.60 per cwt. less discount and non-dutiable items, and duty was paid on said importation on that basis.

2. That the entry here involved was the next shipment received by this importer and the importer prepared and tendered to the Collector of Customs at Jacksonville, Florida an entry on the basis of invoice price discount and non-dutiable items for said merchandise, as will more fully appear by a copy of said entry hereto attached and made a part hereof, marked Exhibit 1, but the said Collector refused and declined to accept said entry and demanded and insisted that the importer prepare and file an entry based upon the alleged foreign market value of said merchandise and that thereupon and in order to secure possession of said merchandise the importer prepared and filed another entry pursuant to the demand of the said Collector, adding to the invoice price the sum of $4921.00, as will more fully appear by copy of said entry as filed, hereto attached and made a part hereof, marked Exhibit 2. That said entry was made by the importer solely and only upon the insistence and demand of the said Collector and was prepared under the direction of said Collector, in order to secure possession of said merchandise and that the said entry was made under duress by the said Collector. That at said time no advances had theretofore been made by the appraiser upon a similar case then pending on appeal for reappraisement and that therefore no duress entry could be made by the importer under the provisions of Section 503 of the Tariff Act of 1930.

3. That within the time allowed by law an appeal to reappraisement was filed to the United States Customs Court and that said Court by its decision handed down on the 26th day of February 1940, held that said merchandise should properly be appraised on the basis of the export value as defined in Section 402 (d) of the Tariff Act of 1930.

4. The importer further shows that the correct dutiable value of said merchandise under the decision of the United States Customs Court is $2.60 per cwt. of $18,019.17 less discounts and non-dutiable charges aggregating $2995.38, that the importer paid the sum of $4986.25 as duty upon said merchandise, whereas the correct amount of duty was $3756.00 and that the importer paid the sum of $1230.25 in excess of the amount legally collectible as duty upon said merchandise.

Two witnesses were called and testified on behalf of the importer, the first being Mr. A. S. Reinoehl, auditor of the company, and the second Mr. C. D. McGehee, president of the company. The Government called and examined Mr. Kimball R. Bobbitt, deputy collector in charge at the Jacksonville port, and apparently acting appraiser, at the time the importations were made in 1936, and Mr. Walker Diamond, an acting appraiser, who stated that at the time of the importations he was deputy collector, acting as entry clerk. The testimony of the witnesses on both sides related in the main to what occurred incident to entry J–307 in April, 1936. As has been stated, there is a sharp conflict between the testimony of the witnesses for the respective parties.

Both Mr. Reinoehl and Mr. McGehee stated that the customs officials told them that an entry would not be accepted on the basis of invoice price but that it must be based on the foreign value, as that value was stated to them by the officials, and that the merchandise would not be released unless the entry was made upon such basis. They also testified to the effect that they were not informed that by executing bond in an amount sufficient to cover the duties estimated upon the basis of foreign value, they could obtain the paper upon entry by the importer at the invoice value and appeal for reappraisement.

The customs officials, on the other hand, testified, in substance, that the parties Reinoehl and McGehee were informed at the time they sought to make the April entry that subsequent to the acceptance of the entry J–271, covering the March importation, information had been received that the appraisement should be based on foreign value; that the April importation then under consideration would be appraised at such value and the collector would appeal for reappraisement in the case of the March entry; that if the importer persisted in making entry at the invoice price and the higher value finally should be sustained it would result in the levy of additional duties under section 489 of the Tariff Act of 1930, and that before the merchandise could be released a bond sufficient to cover duty, etc., based on foreign value, would have to be produced. Mr. Bobbitt, in particular, gave testimony to the effect that Mr. McGehee was told respecting the matter of a "duress certificate" at the time the April entry was under discussion, but the exact information which he gave Mr. McGehee concerning this is not very clearly stated. Mr. Bobbitt did state, in substance, that he did not know at that time, and that Mr. McGehee did not know, of any pending test case, and that there was no conversation with regard to Mr. McGehee making a test case with respect to the April entry.

In view of the law applicable to these consolidated cases we deem it unnecessary to set forth the evidence in detail, but, because of the theory upon which appellant has proceeded, we deem it not improper to state certain impressions relative to the facts which we deduce from the testimony.

The record indicates that neither Mr. Reinoehl nor Mr. McGehee were experienced in making entries of imported merchandise; that they were not fully acquainted with the law respecting the valuation of such merchandise for duty purposes, and that they were not familiar with the so-called duress entry provision of section 503 (b), *supra.* It is clear from Mr. McGehee's testimony that he earnestly believed (and correctly as it subsequently developed) that the invoice price (less certain nondutiable items)represented the correct dutiable value of the paper, and he was greatly exasperated at the action of the customs officials in refusing to appraise it on that basis, or to accept an entry

on that basis. He was in an angry mood at the time of the conversation between himself and Mr. Bobbitt relative to the entry of the April, 1936, importation, and it was his view that it was the duty of the customs officials to advise him respecting the making of entry, etc., as is shown by his answer to a question propounded on cross-examination in his rebuttal testimony, which answer in part reads:

I had a perfect right to expect an official of the Government to whom we pay taxes to give me all the information that was required on this importation and entry, and I didn't hesitate to tell Mr. Bobbitt what I thought about him.

We do not doubt that he received the impression from his conversation with Mr. Bobbitt that in order to obtain release of the paper from customs custody he would have to make entry upon the basis of foreign value, nor do we feel justified in concluding that the customs officials made clear to him the legal rights of the importer respecting valuation, the making of a bond and duress procedure, but we can discern nothing in the evidence which would justify a conclusion that he was misled as to importer's legal rights by anything which was said to him by such officials.

The officials undoubtedly believed from information in their possession in April, 1936, and thereafter when the subsequent entries were made, that the paper should be appraised on the basis of foreign value. That similar paper had been, or was being, so appraised at the port of New York is apparent from the *Arkell Safety Bag Co.* case, *supra*, although, as has been stated, the pendency of that case, if in fact it was then pending, was unknown to the Jacksonville, Fla., officials at that time.

The importer unfortunately did not see fit to confer with counsel and receive advice as to his legal rights before making the entries and it was a mistake on the part of Mr. McGehee to assume that it was the duty of the customs officials fully to advise him. They could not, of course, have bound the Government by advising him nor was the importer bound by their statements. It was the duty of importer to protect its legal rights, which, as the trial court pointed out, it readily might have done by making a test case of the April, 1936, entry.

The trial court expressed the view that the weight of the evidence indicates that the customs officials "influenced or required" the importer to enter the paper at values higher than the correct dutiable values which were the values at which attempt was made to make the April entry, and stated, in substance, that it overruled importer's protests with extreme reluctance because of its belief that the equities are all in importer's favor.

That the importer was "influenced" by the officials to make the entry seems to be true, and the importer's agents evidently obtained the impression that such entry was "required" as a condition precedent to obtaining the merchandise, but it could not have been

legally "required," and had importer tendered proper bond all its statutory rights could have been preserved by its following the defined statutory procedure.

So far as the equities are concerned, one of the familiar equitable maxims is "Equity follows the law." This means, of course, that legal rules and statutory laws may not be cast aside in a proceeding in equity. Incidentally, it may be said that neither the United States Customs Court nor this court has been clothed with the authority of courts of equity, but, even if they were, the situation here is not one in which the plain language of the statutory law could be disregarded.

It is the contention of appellant that the action of the customs officials at Jacksonville, Fla, respecting the six entries involved constituted "moral duress," as defined by the Supreme Court in numerous cited decisions, the most pertinent of which are those in the cases of *Maxwell* v. *Griswold et al.*, 51 U. S. (10 How.) 241, and *Robertson* v. *Frank Brothers Co.*, 132 U. S. 17.

The first of those cases was decided at the December, 1850, term of the Supreme Court. It was an action at law and in the course of its decision the Supreme Court declared, in effect, that it might be sustained under an act of February 26, 1845, or under principles of the common law. The second case, also an action at law, related to merchandise imported in 1882. It was decided October 28, 1889, and the court applied the principle announced in the *Maxwell* v. *Griswold et al.* case, *supra*, no statutory changes having been made which affected its application.

Owing to the fact that we do not find that there was any duress in this case, it is unnecessary to discuss the principles announced in those cases.

We deem it not improper to say that this court in its consideration of this case has found itself, as the trial court found itself, sympathetic with the importer. This we say, however, without any intention of reflecting upon the actions of the customs officials at Jacksonville, Fla. The importer has paid moneys to the Government in excess of the amount which would have been required of it upon the basis of the final reappraisements. That fact would incline us to give the importer the relief it seeks if we felt it within the scope of our authority so to do, but, for the reasons stated, we feel that we are without such authority.

The judgment of the United States Customs Court is *affirmed*.